JANE A. COY, IN HER OWN RIGHT AND AS GUARDIAN OF LUCY, BENJAMIN, MARY, AMELIA, AND MAHITABLE COY, HER MINOR CHILDREN, COMPLAINANTS AND APPELLANTS, *v.* CHARLES MASON.

In 1824, the United States made a treaty with the Sac and Fox Indians, in which there was a reservation of a certain tract of land for the use of the half-breeds, who were to hold it by the same title, and in the same manner, that other Indian titles were held.

In 1834, congress relinquished all the right and title of the United States to the above land, and vested the title in the half-breeds, who, at the passage of the act, under the Indian title, had a right to the same.

In 1840, proceedings were commenced in the district court of Lee county, Iowa, for a partition of the tract among the respective owners.

In 1841, the land was divided into one hundred and one shares, there being that number of original half-breeds who were entitled to shares.

The complainants represented that their grantor was entitled to one and two thirds shares; that he resided in Wisconsin, and had no notice of the partition; that his shares were allotted to another person, and, that the proceedings ought to be set aside as fraudulent.

The record of the proceedings in partition was, by agreement of parties, made evidence before this court; but, not being produced, it is impossible to decide whether or not the charge of fraud is sustained. Moreover, all the parties interested are not before the court; nor is it made out that the shares claimed were allotted to the alleged persons.

THIS case was brought up, by writ of error, from the district court of the United States for the district of Iowa.

The facts in the case are fully stated in the opinion of the court.

It was argued by *Mr. Platt Smith*, for the appellants, and by *Mr. Chase*, for the appellee.

Mr. Justice McLEAN delivered the opinion of the court.

This case is brought before us by a writ of error to the district court for the district of Iowa.

In an Indian treaty, made the 4th of August, 1824, between the United States and the Sac and Fox tribes of Indians, for a large cession of territory within the limits of the State of Missouri and elsewhere, there was reserved the small tract of land lying between the rivers Des Moine and the Mississippi, and the section of the line of the treaty between the Mississippi and the Des Moine, which is intended for the use of the half-breeds belonging to the Sac and Fox nations; they holding it, however, by the same title, and in the same manner, that other Indian titles are held.

On the 30th of June, 1834, congress passed an act relinquishing all the right and title of the United States to the above land, and vested the title in the half-breeds, who, at the passage of the act, under the Indian title, had a right to the same.

Coÿ et al. *v.* Mason.

In 1840, Josiah Spalding and others commenced proceedings in the district court of Lee county, Iowa, for a partition of the tract among the respective owners, against Euphrasine Antaga and others. Notice was given by publication in a newspaper, and, after some delays, a partition was made by the consent of parties.

The complainants, in their bill, represent that Elizabeth Cardinell, alias Elizabeth Antaga, was a half-breed of the Sac and Fox nation of Indians, and the sister of Euphrasine Antaga, and in her lifetime was entitled to one full original share in the above tract. That in the year 1833, the said Elizabeth Cardinell died, leaving St. Paul, Eustace, Eli, Pierre, and Julien Cardinell, her children and only heirs. That these children were all half-breeds, born before the 4th of August, 1824, and were entitled, in their own right, each to a share in the land. That after the 30th of June, 1834, and before the 14th day of April, 1840, all of the said heirs died, except Julien Cardinell, who became the owner of the shares of his mother and brothers.

In 1841, the land was divided into one hundred and one shares, among persons claiming to be the owners. Samuel Marsh, William E. Lee, and Edward C Delevan were trustees for certain claimants, called the New York Company, and were made defendants to the petition for partition; and they claimed one share under Eustace Cardinell, and two thirds of a share under Elizabeth Antaga, by the heirs of Eli and Eustace Cardinell. But the trustees filed no title papers or exhibits, showing their right to the one and two thirds shares claimed by them, and to which Julien was entitled.

The complainants further represent, that when the petition for partition was filed, Julien was a resident of Prairie du Chien, in the territory of Wisconsin, a distance of more than two hundred miles from the half-breed tract, and that he had no notice, &c. That the consent to the decree was a fraudulent device by the parties, and is consequently void. That Marsh, Lee, and Delevan had no right to the one and two thirds shares claimed; that they drew the said shares under the agreed plan of division, without right, &c.

The complainants allege that they claim under a deed of conveyance from Julien Cardinell, dated 25th of February, 1848, and by descent, the one and two thirds shares. These shares, it is alleged, were disposed of by Marsh, Lee, and Delevan, to Mason, the defendant, in 1852, who now claims them; that he is now in possession of the land, enjoying the rents and profits, and refuses to account, &c. Other allegations of fraud are made, of which Mason had notice, &c., and the complainants pray that the decree of partition may be set aside and annulled, as fraud-

49*

ulent and void, and that a repartition may be had, and that the complainants may be allowed their interest in the land, &c.

The defendant demurs to the bill, and also answers, not waiving his demurrer, &c.

He admits that Elizabeth Cardinell was a half-breed, but denies that the children, whose names are stated in the petition, were half-breeds of the Sac and Fox nations, their father being a white man. He admits the death of the persons stated by the complainants in their petition, and that Marsh, Lee, and Delevan, as trustees, &c., claimed one share under Eustace Cardinell, and two thirds of a share under Elizabeth Cardinell, called Antaga, through Eli and Eustace Cardinell, heirs, &c. But he denies that the trustees ever drew or received the said one and two thirds of a share, or any portion thereof, as set forth in the petition, or in any other manner; and he denies the allegations of fraud, &c.

" The parties agreed to the following facts : That Elizabeth Cardinell was a half-breed of the Sac and Fox nations of Indians; and died in 1826, leaving Julien Cardinell, and his four brothers, St. Paul, Eustace, Eli, and Pierre, her children, whose father was a white man. Julien was born in 1821, and his brothers prior to the year 1824. All the children of the said Elizabeth were living on the 30th of June, 1834, and all, except Julien, died unmarried before 1840, leaving no children. In 1848, Julien conveyed to Coy and Brace, by a deed which is to be produced in court. Coy died in 1849, leaving the present plaintiff as his widow, and a family of children. Brace died about the same time, leaving also a widow and children, who reside in Iowa."

" The title of the half-breeds of the Sac and Fox nations of Indians appears by the treaty of August, 1824, and the act of congress of June 30, 1834. It is admitted that there were one hundred and one true original half-breeds who were entitled to shares."

" The record of the partition suit is to be regarded as in evidence, and either party may use any portion of it in the supreme court, whether the same is used in the district court or not; but the following facts are admitted to be true, unless contradicted by the record. The suit for partition was commenced in the spring of 1840. Legal notice thereof was given by publication, and no other service was made on any of the defendants in that suit. The case would have regularly come up for hearing in October, 1840, but was postponed till April following, to give more abundant time for all persons interested to appear and present their claims. Marsh, Lee, and Delevan were defendants in that suit; they claimed upwards of sixty shares, and among

them were the one and two thirds shares, as set forth in the petition in this suit.    In the judgment of partition, forty-one shares were allowed them.    Elizabeth Cardinell is the same person as Elizabeth Antaga, and is a sister of Euphrasine Antaga."

" The defendant in this suit has become a purchaser of the interests owned by Marsh, Lee, and Delevan, as will be more fully shown by their deed to him.    More than $100,000 of the purchase-money remains unpaid.    Marsh, Lee, and Delevan are not residents of the State of Iowa."

" At the time of the partition, Julien Cardinell was absent from the territory of Iowa, residing in Prairie du Chien, more than two hundred miles distant.    The country at that time was new.    He was ignorant and illiterate.    There was no guardian appointed for him, nor any person present in court to represent his rights.    There is no exhibit on record tending to show that Marsh, Lee, and Delevan, or either of them, had any right to the shares of the said Julien, or to any interest derived from either of his brothers, or from his mother.    The half-breed tract contains about 120,000 acres of land.    Keokuk is a large town situated on the tract."

" The claimants in the tract are very numerous, amounting to several hundreds.    It would be impracticable to make them all parties.    In the partition suit no one but Marsh, Lee, and Delevan laid claim to any share under any of the Cardinells, with the exception of one half of one share, which was drawn by Ebenezer D. Ayres."

" The whole tract was divided, but no part was set off to the said Julien, and no mention is made of his rights in said record. He had no guardian and no notice, except the constructive notice by newspaper publication in Iowa."

The bill prays that the decree of the district court, on the ground of fraud, may be declared void, so far as the rights of the complainants are affected, and that a repartition of the land may be ordered.    But there is no evidence of fraud, unless it be inferred from the facts admitted.    The facts in regard to the partition suit are admitted, unless contradicted by the record ; but the record of that proceeding is not before us, and without it we are unable to determine the extent of the admissions.    If there were evidence of fraud in the partition, we could not take jurisdiction of that proceeding, as the parties interested are not before us ; and for the same reason, the district court had no jurisdiction of this part of the case.

The answer denies that the one and two thirds shares claimed were allowed to Marsh, Lee, and Delevan, and there is nothing in the admission of facts which disproves the answer in this respect.    The defendant admits that the trustees claimed these

shares, but it is not admitted that they were allowed to them in the partition. The evidence does not identify and establish, as against the defendant, the right claimed by the complainant. The decree of the circuit court, which dismissed the bill, is affirmed.

### Order.

This cause came on to be heard on the transcript of the record, from the district court of the United States for the district of Iowa, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said district court in this cause be and the same is hereby affirmed, with costs.